UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-78 (DSD/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS** |
| v. | |
| JEFFREY LEONARD REWEY, | |
| Defendant. | |

The United States of America, by and through its attorneys, W. Anders Folk, Acting United States Attorney for the District of Minnesota, and Justin A. Wesley, Assistant United States Attorney, respectfully submits this reply to the Defendant's pretrial motions. (DCD 43-52).

## I.  BACKGROUND

In July 2019, the FBI Safe Streets Task Force (SSTF) received information that Jeffrey Rewey was selling narcotics and in possession of firearms. On July 11, 2019, the FBI executed a search warrant at Mr. Rewey's one room efficiency apartment in St. Paul. They encountered Mr. Rewey as he outside near his vehicle and recovered one gram of methamphetamine from his person. Mr. Rewey made statements about how he was the only person who lived in the apartment and provided keys to the apartment upon request from law enforcement.

In the apartment, police found a backpack containing a Tupperware container with approximately 257 grams of methamphetamine. Another two grams of methamphetamine

was found in a container on the kitchen table. Also in the backpack were a loaded Springfield .45 caliber handgun and a loaded Ruger .380 handgun, both of which were manufactured outside the State of Minnesota. Mr. Rewey has six prior felony convictions between 1990 and 2014. Officers also seized an eviction letter addressed to Mr. Rewey at this address, Mr. Rewey's wallet, two digital scales, a stun gun, packaging, and $3,922 in cash.

The next day, Officer Joshua Raichert of the St. Paul Police Department gathered pedigree information from Mr. Rewey, including his address. After being given a Miranda warning, Mr. Rewey said he was living at the apartment for close to a year. He then asked for a lawyer.

Subsequent testing by the Minnesota Bureau of Criminal Apprehension (BCA) confirmed the presence of methamphetamine. Subsequent DNA testing on swabs taken from the guns revealed a mixture a mixture of four or more individuals on the Springfield firearm. There was a major male DNA profile which matched Mr. Rewey's DNA profile. The swabs from the Ruger yielded insufficient DNA for testing.

On January 17, 2020, the United States filed a complaint charging the Defendant with one count of possession with intent to distribute methamphetamine and one count of felon in possession of a firearm. On January 18, 2020, Mr. Rewey was arrested by Washington County Deputy Rinzel. Deputy Rinzel located a small baggie containing methamphetamine along with a suspected meth pipe. In a post-Miranda statement, Mr. Rewey admitted that the confirmed the substance was methamphetamine.

On January 21, 2020, FBI Special Agents Matthew Parker and Mark Fredkov transported Mr. Rewey from the Washington County jail to appear in federal court. S.A. Parker reminded Mr. Rewey that he had asked for an attorney earlier so he would not be asking any questions. He explained to Mr. Rewey that he would be seeing a pretrial officer before court and they would determine if he could get a federal defender. Mr. Rewey stated "forget an attorney, I'm screwed." Mr. Rewey went on to explain that after the warrant was executed at his house he had "no more possession of anything except just for personal use stuff."

On May 14, 2020, a grand jury Indicted the Defendant with one count of possession with intent to distribute methamphetamine and one count of felon in possession of a firearm.

## II.  Defendant's Motions to Suppress Evidence.

### a. Defendant's Motion to Suppress Statements (DCD 51).

The Defendant moves to suppress all statements made "prior to, at the time of, or subsequent to his arrest" and cites general grounds for suppression (DCD 51). The government has spoken with defense counsel in an effort to streamline the issues.

On July 11, 2019, The Defendant made spontaneous statements to officers at the scene when the search warrant was executed. Some of these statements included that he's an addict, no one else was inside the house, and at one point he said he had two guns in the apartment. The government intends on introducing body worn camera footage as well as testimony from Officers Glenn Perez and/or Jason Whitney regarding these statements.

On July 12, 2019, the Defendant provided pedigree information prior to his Mirandized statement. This included his address, which was the apartment that police searched. After being read his Miranda rights, he was asked how long he lived at the address. The Defendant responded "close to a year." He then inquired if he asked for a lawyer, how long would it take for a lawyer to get there? The interviewing officer asked a clarifying question, and the Defendant asked for a lawyer and the interview ended. The government intends on introducing a copy of the recording and signed Miranda waiver. To the extent the government needs to establish grounds for admissibility of any post-Mirandized statements through testimony, it intends to call St. Paul Police Officer Joshua Raichert.

On January 18, 2020, the Defendant made statements about his possession of methamphetamine in a recorded and Mirandized statement. The government intends on offering the recording as well as testimony from Deputy Lauden Rinzel.

On January 21, 2020, the Defendant made spontaneous incriminating statements during his transport to federal court. The government intends on offering the recording of these statements along with testimony from FBI S.A. Matthew Parker.

All of these statements are admissible as spontaneous utterances (not in response to interrogation), responses to standard booking questions (pedigree information), or knowing, intelligent, and voluntary statements made after a Miranda warning was given.

   b. **Defendant's Motion to Suppress Evidence (DCD 50).**

The Defendant moves to suppress "any physical evidence obtained as a result of a search and seizure" citing general grounds for suppression. (DCD 50). The specific

searches are identified in the Defendant's Discovery Declaration. (DCD 42 at 2.) As such, the government will calling witnesses to establish the Constitutionality of any warrantless searches and will otherwise submit a copy of the warrant materials should the Court deem it necessary to conduct a four-corners analysis.

The warrants were all supported by probable cause. Even if they weren't they were certainly executed in good-faith. The warrantless searches were justified under the search incident to arrest exception, automobile exception, inventory search exception, or otherwise supported by probable cause and exigent circumstances.

### III.   Defendant's Discovery Motions.

The Defendant filed several general discovery motions. These motions appear to be of the boilerplate variety and do not relate to any ongoing disputes regarding the government's discovery. Accordingly, the government does not intend to present any witness testimony regarding these motions during the motions hearing.

   a. **Defendant's Motion for Discovery (DCD 45).**

The government has made its Rule 16 disclosures and will continue to supplement its disclosures as any additional materials come into its possession. The Defendant has not identified any evidence or materials, or category of evidence or materials, to which he is entitled that has not already been produced by the government. For its part, the government does not believe there is any.

   b. **Defendant's Motion for Disclosure of 404(b) evidence (DCD 43).**

The Defendant has moved for an order requiring the government to "immediately disclose" 404(b) evidence and "direct the government to identify the witnesses through

whom such evidence will be presented at trial." (DCD 43). The government acknowledges its obligation to give notice under Rule 404(b).

Under the rule, the Government is required to "provide reasonable notice in advance of trial or during trial if the court excuses pretrial notice on good cause shown." Fed. R. Evid. 404(b). *See* Fed. R. Evid. 404(b) advisory committee's notes, 1991 Amendments ("Other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes a reasonable request will depend largely on the circumstances on each case."). The government proposes to make its notification 14 calendar days prior to trial. Under the circumstances of this case, 14 days is a reasonable notice period.

The government also requests that any order be strictly drawn to require no more than what is encompassed by Rule 404(b). Specifically, Rule 404(b) does not encompass acts that are "intrinsic" to the charged offense. Fed. R. Evid. 404 advisory committee's notes, 1991 Amendments. If conduct of a defendant is an "intrinsic" part of any of the charged offense but could otherwise be considered a "bad act," then Rule 404(b) does not contemplate that notice of such evidence be given. The distinction is an important one, as the defense may claim that the government must give notice of every "bad act" it intends to introduce, which is not so. *United States v. Adediran*, 26 F.3d 61, 63 (8th Cir. 1994) (standards applicable to evidence considered under Rule 404(b) do not apply to such "inextricably intertwined" evidence).

### c. Defendant's Motion for Disclosure of Brady Materials (DCD 44).

The Defendant has moved for disclosure of exculpatory, favorable, and impeaching information under *Brady v. Maryland*, 373 U.S. 83 (1963), which the government interprets

6

to include any exculpatory information, and information relating to witnesses' bias under *Giglio v. United States*, 405 U.S. 150 (2017). (DCD 44). The government understands, has substantially complied with, and will continue to comply with, its *Brady* and *Giglio* obligations to produce exculpatory/impeachment evidence to the defense. If any additional such evidence comes to the government's attention, it will be turned over promptly and sufficiently before trial to enable the Defendant to make effective use of it.

### d. Defendant's Motion to Disclose Informant Information. (DCD 46).

The Defendant moves for an Order requiring the government to disclose the identity of any informant or informants involved in this investigation, and to make them available for interviews by defense counsel. (DCD 46). While law enforcement did initially receive information from a confidential source, that person is covered by the informant privilege. *See United States v. Roviaro*, 353 U.S. 53, 59 (1957); *McCray v. Illinois*, 386 U.S. 300, 310 (1967). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59. "In determining whether disclosure is required, the threshold issue is whether the informant is a material witness." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001). But to overcome the informant privilege, a defendant must provide "more than speculation that the evidence an informant may provide will be material." *Id*. (quoting *United States v. Grisham,* 748 F.2d 460, 463-64 (8th Cir. 1984)). Instead, the defendant "bears the burden of demonstrating that disclosure is material to the outcome of his case; in other

7

words, that disclosure is vital to ensure a fair trial." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001). "A trial court abuses its discretion if it orders disclosure absent a showing of materiality." *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). The Defendant has failed to meet this exacting burden.

In circumstances where the informant is an active participant in the conduct charged, the informant's identity is "almost always" material. *United States v. Sanchez*, 429 F.3d 753, 756 (8th Cir. 2005). On the other hand, if the informant is a mere "tipster," there is generally a strong presumption against disclosure. *United States v. Lindsey*, 284 F.3d 874, 877 (8th Cir. 2002).

Here the Defendant has provided no basis for this Court to conclude that the disclosure of the informant in this investigation would be material to the defense. Because the Defendant has been charged by Indictment based solely upon the observations and seizures of law enforcement, as well as the expected testimony of its witnesses, the informant qualifies as a "mere tipster" under the well-established law. The government does not intend on calling this informant as a witness.

The Eighth Circuit has not required the government to disclose the identity of an informant under facts similar to those present in this case. *See, e.g., United States v. Hollis*, 245 F.3d 671 (8th Cir. 2001); *United States v. Harrington*, 951 F.2d 876 (8th Cir. 1991); *United States v. Bourbon*, 819 F.2d 856 (8th Cir. 1987); *United States v. Pajari*, 715 F.2d 1378 (8th Cir. 1983); *United States v. Skramstad*, 649 F.2d 1259 (8th Cir. 1981). For example, in *Hollis*, an informant provided information that he had seen methamphetamine in a residence within the previous 10 days. This information led to a search warrant, the

seizure of marijuana and methamphetamine, and charges against *Hollis* for possession with intent to distribute these drugs. The defense later produced a witness who claimed that she accompanied the informant to the residence and that neither of them had seen the drugs. Holding that disclosure was not required, the Court concluded that the informant was a "tipster" and stated:

> The confidential informant in this case did not participate in the offense charged against Hollis, and the government stated that it did not intend to call the informant as a witness at trial. There was, accordingly, no obligation on the part of the government to reveal the informant's identity.

*Hollis*, 245 F.3d at 674.

Similarly, in *Harrington*, the police used an informant to make controlled buys of crack cocaine from occupants of an apartment. Based upon this information, the police obtained a search warrant and seized crack cocaine. As a result, various occupants of the apartment were charged with drug-related charges relating to the possession of the cocaine base. The Court found that disclosure was not "vital to a fair trial because the informant's testimony would not further any legitimate interests of the defendants." The Court went on to find that the informant was a "tipster" who alerted police that the defendants were offering crack cocaine for sale. The Court noted that even though the informant had engaged in drug transactions and observed cocaine in the apartment the day before the search, he "neither witnessed nor participated in the search of the apartment." Importantly, the Court relied upon the government's assertion that it did not intend to call the informant to testify. *Harrington*, 951 F.2d at 878.

Here, the Defendant has offered nothing to support his motion to compel the government to disclose the identity of the informant or to produce that individual for a pretrial interview. The government respectfully represents that the informant used by law enforcement in this case qualifies as a "mere tipster" as outlined in well-established Eighth Circuit law, and the government does not intend on calling this tipster at trial. As such, disclosure is not warranted under *Roviaro* and its progeny. For these reasons, the Defendant's motion should be denied.

### e. Defendant's Motion for early Jencks Act Material. (DCD 47).

The Defendant moves for early Jencks Act material. (DCD 47) (requesting such material at least two weeks prior to trial). The Eighth Circuit has repeatedly held that the government cannot be compelled to produce Jencks Act material until after a witness has testified at trial on direct examination. *See, e.g.*, *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992). The Defendant's motion should therefore be denied. Notwithstanding this, the government will provide the Defendant with all Jencks Act material no later than three business days prior to trial. However, the government objects to the Court ordering the government to do so.

### f. Defendant's Motion regarding Rough Notes (DCD 48).

The Defendant requests an Order requiring law enforcement to preserve rough notes taken as part of the investigation. (DCD 48). It is well established in the Eighth Circuit that the government is not required by law to preserve rough notes taken by agents during an investigation. See United States v. Grunewald, 987 F.2d 531, 535 (8th Cir. 1993). In this District, the United States does not normally object to pretrial motions which seek the

agents to retain their rough notes. Accordingly, the United States does not object to this motion to the extent that any such rough notes still exist.

However, the United States opposes any request for the disclosure of those rough notes to the Defendant. Rough notes are not considered statements within the meaning of the Jencks Act, 18 U.S.C. § 3500. *United States v. Redding*, 16 F.3d 298, 301 (8th Cir. 1994) (concluding that rough notes are not a statement of witness as there was no evidence witness signed, adopted or approved of notes); *United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (defendant not entitled to discover government agents' general notes from witness interviews). Nor are agent rough notes generally discoverable as a "statement" of the agent." *See United States v. Simtab*, 901 F.2d 799, 808-09 (9th Cir. 1990) (defendant not entitled to discover testifying agents' destroyed rough notes of investigations because Jencks Act material when merely represented pieces of information put in writing to refresh memory); *United States v. Williams*, 875 F.2d 846, 853 (11th Cir. 1989) (defendant not entitled to discover agents' personal notes, contact sheets, witness lists, summaries of non-testifying witnesses' statements when bulk of material not relevant to subject matter of agents' testimony).

### g. Defendant's Motion for Expert Discovery (DCD 49).

The Defendant moves for an Order for disclosure of expert testimony. (DCD 49). The government does not object to this motion, and will provide such expert discovery no later than 14 days before trial unless otherwise directed by the Court.

    **h.  Defendant's Motion regarding Electronic Surveillance (DCD 52).**

The Defendant moved for an order directing the government to disclose any wiretaps or other electronic surveillance. (DCD 52.) The government spoke with counsel for the Defendant to confirm there were no such wiretaps. There was an executed warrant authorizing the tracking of the Defendant's phone, which was already disclosed to the defense.

### IV.   Conclusion

Based on the foregoing, the government respectfully requests that the Court deny the Defendant's motions to suppress evidence, to provide informant information, and for early Jencks act material, and grant his motions for discovery and disclosure as provided herein.

Dated: May 24, 2021                             Respectfully Submitted,

                                                        W. ANDERS FOLK
                                                        Acting United States Attorney

                                                        */s/ Justin A. Wesley*
                                                        BY:  JUSTIN A. WESLEY
                                                        Assistant U.S. Attorney
                                                        Attorney ID No. 0389189